Barrett N. **WEINBERGER**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

No. CR–1–97–79.

United States District Court,
S.D. Ohio,
Western Division.

Oct. 21, 1999.

Henry Louis Sirkin, Sirkin, Pinales, Mezibov & Schwartz, Cincinnati, OH, for Petitioner.

Christopher Keen Barnes, U.S. Attorney, Cincinnati, OH, for U.S.

## OPINION AND ORDER

BECKWITH, District Judge.

Petitioner is an inmate in federal custody pursuant to a judgment of conviction entered on June 29, 1998. Petitioner had pleaded guilty to Count 1, mail fraud in violation of 18 U.S.C. § 1341, Count 6, interstate transportation of money in execution of fraud in violation of 18 U.S.C. § 2314 and Count 12, tax evasion in violation of 26 U.S.C. § 7201. No direct appeal was taken from either Petitioner's convictions or sentence. This matter is now before the Court on Petitioner's pro se motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 27), Respondent's response (Doc. No. 30), and Petitioner's reply (Doc. No. 31).

### Background

A detailed statement of the facts in this case appears in the record (Doc. No. 16). The gist of the charges is that Petitioner was an attorney at law entrusted with the affairs of Dorette K. Fleischmann ("Fleischmann"), her daughter Joan Fleischmann Tobin ("Tobin"), and the Fleischmann estate. Through an assortment of devices, Petitioner diverted approximately $1.14 million from Fleischmann, Tobin and the Fleischmann estate and converted said funds to his personal use during a period beginning in 1989 and continuing through December, 1994. The diversion and conversion of the various funds occurred in the Southern District of Ohio and elsewhere. On October 1, 1997, the Grand Jury for the Southern District of Ohio, Western Division, returned a twelve (12) count indictment against Petitioner. Petitioner pleaded guilty to Counts 1, 6, and 12 pursuant to a plea agreement with the government. On June 29, 1998, Petitioner was sentenced to forty-one (41) months on each count to run concurrently; followed by three years of supervised release on each count to run concurrently; restitution in the sum of $1,285,243.24 on Counts 1 and 6 to be paid through the Bureau of Prisons Inmate Financial Responsibility Program with any unpaid balance to be paid in monthly installments pursuant to a payment plan to be developed by Petitioner and his probation officer; restitution in the sum of $370,624 to the Internal Revenue Service on Count 12; no fine; and $150 in combined special assessments for the three counts of conviction. Counts 2, 3, 4, 5, 7, 8, 9, 10 and 11 were dismissed upon motion by the government. Petitioner declined the Court's offer to have the courtroom deputy file a notice of appeal in his behalf and did not thereafter pursue a direct appeal of his pleas of guilty or his sentence.

On February 19, 1999, Petitioner filed the present motion raising four bases upon which he believes that he is entitled to have his sentence vacated, set aside or corrected. First, Petitioner contends that the Court erred in failing to group all of the counts of conviction pursuant to § 3D1.2 of the United States Sentencing Guidelines ("U.S.S.G.") (closely related counts) for purposes of calculating his adjusted offense level for sentencing. As a consequence, he argues that his adjusted offense level was two levels too high and resulted in a sentencing range of thirty-three (33) to forty-one (41) months rather than a sentencing range of twenty-seven (27) to thirty-three (33) months, which he argues is the correct range. Second, Peti-

**806**

tioner argues that the Court incorrectly applied 18 U.S.C. § 3663A (the Mandatory Victims Restitution Act of 1996) rather than 18 U.S.C. § 3663 to his restitution obligation for Counts 1 and 6 in violation of the Ex Post Facto Clause (U.S. Const., Art. I, Sec.9, I.3), when the Court ordered Petitioner to make restitution in full. Third, Petitioner argues that the Court incorrectly ordered restitution to the Internal Revenue Service in connection with Count 12 for tax year 1994, despite the fact that he "was convicted of violating 26 U.S.C. § 7201 with respect to his taxes for years 1990, 1991, 1992 and 1993" only. Fourth, Petitioner argues that the Court erred in delegating the judicial function of setting the amount, timing and schedule of installment payments on his restitution obligations to the Bureau of Prisons and the United States Probation Office, both agencies of the Executive Branch of government, in violation of the Constitutional Separation of Powers doctrine.

*Analysis*

■ An action brought pursuant to 28 U.S.C. § 2255 must allege an error that meets the constitutional standards for collateral attack. A petition properly brought under this section must allege that a District Court

1) Committed an error of constitutional magnitude;

2) Imposed a sentence outside the statutory limits; or

3) Proceeded under an error of fact or law which was so fundamental as to render the entire proceedings invalid.

*See United States v. Addonizio,* 442 U.S. 178, 186, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979); *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). A § 2255 motion is not limited to constitutional claims, but a non-constitutional error does not provide a basis for collateral attack unless it involves a "fun-

damental defect which inherently results in a complete miscarriage of justice." *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). Ordinarily, collateral review under § 2255 is not available for errors committed in the application of the sentencing guidelines. *See Grant v. United States,* 72 F.3d 503 (6th Cir.1996). Rather, a Defendant must assert such claims on direct appeal. *See id.*[1]

■ Issues that Petitioner failed to raise before the trial court or on direct appeal will be considered waived, unless Petitioner shows cause for and prejudice from failing to raise them. *See United States v. Frady,* 456 U.S. 152, 167–168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Ratliff v. United States,* 999 F.2d 1023, 1025 (6th Cir.1993); *Noonan v. United States,* 262 F.2d 585 (6th Cir.1958). Ineffective assistance of counsel, if alleged and demonstrated by Petitioner, will constitute cause for purposes of this standard. *See Ratliff,* 999 F.2d at 1026. Alternatively, a prisoner may secure collateral review of issues that he failed to raise before the trial or appellate court by showing that failure to consider his claims would lead to a "fundamental miscarriage of justice" because the constitutional violation probably resulted in the conviction of a person who is actually innocent. *See United States v. Cox,* 83 F.3d 336, 341 (10th Cir.1996) (citing *Sawyer v. Whitley,* 505 U.S. 333, 339–340, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)); *Spivey v. United States,* Case No. CRI-MA4:94CR00302HLM, CIV A4:96–CV–093–HLM, 1996 WL 735568, at *2 (N.D.Ga.1996) (citing *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).

In *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court articulated a two-part test that a defendant must satisfy to establish his counsel's assistance was so deficient as to amount to a constitutional

---

**1.** *See also United States v. Schlesinger,* 49 F.3d 483, 485 (9th Cir.1994); *Knight v. United States,* 37 F.3d 769, 772 (1st Cir.1994); *Scott v. United States,* 997 F.2d 340, 342 (7th Cir. 1993).

violation requiring reversal of the conviction or sentence. In order to prevail on an ineffective assistance of counsel claim, Petitioner must demonstrate (1) his counsel made such serious errors that he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the trial result. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

Under the first prong of the *Strickland* test, Petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *See id.* at 688, 104 S.Ct. 2052. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689, 104 S.Ct. 2052. In determining whether counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. *See id.*

Under the second "prejudice" prong of the *Strickland* test, the focus is on whether counsel's deficient performance affected the outcome of the trial. Petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the trial level proceeding would have been different. *See id.* at 694, 104 S.Ct. 2052. A showing by Petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this standard. *See id.* at 693, 104 S.Ct. 2052. However, by the same token, Petitioner need not demonstrate that his counsel's conduct "more likely than not" altered the trial level outcome to establish prejudice. *See id.* The ultimate focus of the inquiry must be on the fundamental fairness of the proceeding, i.e., whether the result of the proceed-

ing "is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 696, 104 S.Ct. 2052.

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether Petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that Petitioner made an insufficient showing on either ground. *See id.* at 697, 104 S.Ct. 2052.

▇ In connection with his first and fourth grounds for correcting his sentence, Petitioner claims ineffective assistance of his privately-retained counsel, Henry Louis Sirkin, as the cause for failing to raise these issues either in the trial court or on direct appeal. The Court finds that Petitioner's first claim is most readily resolved upon its merits and in so doing the Court addresses the claim of ineffective assistance of counsel as well. Petitioner relies upon U.S.S.G. § 3D1.1 for the proposition that

> (a) When a defendant has been convicted of more than one count, the court shall:
>
> > 1) Group the counts resulting in conviction into distinct Groups of Closely Related Counts ("Groups") by applying the rules specified in § 3D1.2.

Sec. 3D1.2 provides that

[a]ll counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule

> (a) When counts involve the same victim and the same act or transaction
>
> (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan
>
> (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjust-

ment to the guideline applicable to another of the counts

(d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior

Offenses covered by the following guidelines are to be grouped under this subsection:

§§ 2B1.1, 2B1.3, 2B4.1, 2B5.1, 2B5.3, 2B6.1;

§§ 2C1.1, 2C1.2, 2C1.7;

§§ 2D1.1, 2D1.2, 2D1.5, 2D1.11, 2D1.13;

§§ 2E24.1, 2E5.1;

§§ 2F1.1, 2F1.2;

§ 2K2.1;

§§ 2L1.1, 2L2.1;

§ 2N3.1;

§ 2Q2.1;

§ 2R1.1;

§§ 2S1.1, 2S1.2, 2S1.3

§§ 2T1.1, 2T1.4, 2T1.6, 2T1.7, 2T1.9, 2T2.1, 2T3.1.

Specifically excluded from the operation of this subsection are all offenses in Chapter Two, Part A.

§§ 2B2.1, 2B2.3, 2B3.1, 2B3.2, 2B3.3;

§ 2C1.5;

§§ 2D2.1, 2D2.2, 2D2.3;

§§ 2E1.3, 2E1.4, 2E2.1;

§§ 2G1.1, 2G2.1;

§§ 2H1.1, 2H2.1, 2H4.1;

§§ 2L2.2, 2L2.5;

§§ 2M2.1, 2M2.3, 2M3.1, 2M3.2, 2M3.3, 2M3.4, 2M3.5, 2M3.9;

§§ 2P1.1, 2P1.2, 2P1.3.

*For multiple counts of offenses that are not listed, grouping under this subsection may or may not be appropriate, a* *case-by-case determination must be made based upon the facts of the case and the applicable guidelines (including specific offense characteristics and other adjustments) used to determine the offense level* (emphasis added).

Petitioner argues that under either § 3D1.2(c) or (d) he is entitled to have Count 12 ("the tax count") grouped with Counts 1 and 6 ("the fraud counts"). Thus, he concludes that his correct adjusted offense level should have been 18 without the two levels added pursuant to U.S.S.G. § 3D1.4. He ignores the fact that neither Count 1 nor Count 6 have any connection either factually or legally with Count 12. Count 1 deals with a letter sent to Tobin's other attorney, Barbara Walker, by the United States Postal Service on November 28, 1994 containing a false accounting of Petitioner's expenditures in connection with Fleischmann's HNB line of credit funds. Count 6 deals with Petitioner's interstate transportation of money in connection with his diversion of $42,-559.16 from Fleischmann's HNB credit line of funds in Cincinnati to a mortgage company in Illinois on October 3, 1993. Count 12, on the other hand, deals with Petitioner's willful attempt to evade payment of income tax due and owing for the year 1993. Neither mail fraud nor interstate transportation of money constitute elements of Count 12, the tax count, nor does tax evasion in any way constitute an element of either of the fraud counts.

Moreover, the application notes to U.S.S.G. § 3D1.2 specifically state that "a primary consideration in this section is whether the offenses involve different victims ... [whether] cases involving injury to distinct victims are sufficiently comparable, whether or not the injuries are inflicted in distinct transactions, so that each such count should be treated separately rather than grouped together ... the court should look to the underlying policy of this Part as stated in the Introductory

Commentary." [2] Fleischmann is the victim in Counts 1 and 6 while the United States is the victim in Count 12. Count 12 may not properly be grouped with counts 1 and 6.

The dearth of case law cited by Petitioner in both his original memorandum in support of his petition and his reply is telling. Indeed, the Sixth Circuit has addressed nearly the identical issue in *United States v. Williams*, 154 F.3d 655 (6th Cir.1998) (citing *United States v. Vitale*, 159 F.3d 810 (3rd Cir.1998) (with approval), where it concluded that bankruptcy fraud and tax evasion counts should not be grouped. Petitioner's attempt to differentiate this case from *Williams* by pointing out that that case involved bankruptcy fraud as opposed to mail fraud as in this case is unconvincing. The fraud counts fall within U.S.S.G. § 2F1.1 for offense level calculation while the tax count falls within U.S.S.G. § 2T1.1 Indeed, the fraud counts (18 U.S.C. §§ 1341 and 2314) fall in an entirely different title in the code from the tax count (26 U.S.C. § 7201). One may commit fraud without committing tax evasion as well as vice versa. If Petitioner had committed any number of income producing crimes, it would be absurd to suggest that failure to pay taxes on the ill-gotten gains cannot be effectively sentenced because it would constitute double counting. This is not double counting.

As for Petitioner's claim that his counsel was ineffective in failing to raise this issue, it is clear that such an argument is without legal or factual support. The issue is without merit. It follows, then, that defense counsel was not ineffective for failure to raise a meritless objection.

▮▮▮▮ Petitioner next claims that the Court incorrectly applied 18 U.S.C. § 3663A in his sentencing. The Mandatory Victims Restitution Act ("MVRA"), as it is commonly called, requires the Court to order full restitution regardless of a defendant's anticipated ability to pay. That Act became effective on April 24, 1996 well after the completion of the crimes of conviction here. The predecessor of this Act, known as the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, required the sentencing court to make specific findings regarding certain factual issues, including the defendant's ability to pay. Petitioner claims that by applying the MVRA to his sentence, this Court violated the Ex Post Facto Clause. Thus, Petitioner argues that the Court committed an error of constitutional magnitude in his sentence with regard to the order of restitution and moreover imposed a sentence outside the statutory limits under an error of law as to the applicable statute.

Both the Petitioner and the government have extensively briefed this issue. Indeed, Petitioner has devoted six pages of his seventeen page memorandum in support of the petition to this issue alone. He argues that this Court was obligated to consider his financial resources, needs, earning ability and the economic needs of his dependents before establishing an order of restitution.[3] Additionally, Petitioner points out that the restitution ordered by the Court must be satisfied within the period of any supervised release following imprisonment.[4] Petitioner calculates that at the rate of $30,000 per year representing his maximum annual income after 1994, it would take in excess of 80 years to repay the $1,655,667.25 ordered to be repaid.

Although Petitioner concedes that indigency at the time of sentencing is not a bar to an order of restitution,[5] he never-

---

**2.** *See* App. Note 8.

**3.** *See United States v. Meacham*, 27 F.3d 214 (6th Cir.1994).

**4.** Petitioner cites *United States v. Copple*, 74 F.3d 479 (3rd Cir.1996), in support of this proposition, as well as, 18 U.S.C. § 3663(f)(2).

**5.** Petitioner cites *United States v. Mahoney*, 859 F.2d 47, 52 (7th Cir.1988) for this proposition.

theless opines that an improbable or impossible order of restitution defeats any hope of rehabilitation. Thus, he argues such a huge restitution order is improper.[6] The government responds that the Circuits have not consistently approached the question of whether 18 U.S.C. § 3663A may be applied to offenses completed prior to its effective date. None of the cases cited by the government is entirely on point. In *United States v. Ledford,* Nos. 96–5659, 96–6589, 1997 WL 659673, *4 (unpublished decision, 6th Cir.1997.), *cert. denied,* 523 U.S. 1060, 118 S.Ct. 1388, 140 L.Ed.2d 648 (1998), the Circuit implies that there is no ex post facto problem where the maximum amount of restitution remains the same under either incarnation of the statute.

The Court notes that this issue was raised at the sentencing hearing and addressed in the sentencing judgment order (Doc. No. 21 at 8):

> [t]he Defendant noted that there was a split among circuits as to the retroactivity of the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663A, and asked the Court to hold that the Act may not be applied retroactively. However, as stated on the record at the hearing, the Court finds that it need not resolve this issue as it finds that an order of restitution is appropriate in this case, whether it be mandatory or not.

The Court, essentially determined the issue to be moot and, therefore, impliedly overruled Petitioner's objection. Petitioner did not appeal that ruling, and he does not address why that decision should not stand. He makes no argument that defense counsel was ineffective in not pursuing a direct appeal on that basis. The Court, therefore, concludes that this issue has been waived.

■ Even if the issue were not waived, the record shows that the Court did consider Petitioner's financial resources, needs, earning capacity[7] and the economic needs of his dependents before establishing the order of restitution:

> [t]he Probation Office has provided the Court with a detailed report on the Defendant's financial situation and his prospect for future employment. The Court has taken this information into consideration in determining the appropriate restitution order. Furthermore, the post-imprisonment plan to be developed by the Defendant and the probation officer will take into consideration his financial status and the needs of the Defendant's dependents. (*Id.* at 9).

Finally, the record reveals that in the plea agreement in this matter, Petitioner agreed to the application of 18 U.S.C. § 3663A (Doc. No. 13 at 2):

> [s]uch cooperation shall also include identifying and assisting the United States and the Court, through the U.S. Probation Office, *pursuant to 18 U.S.C. §§ 3663A* and 3664, in the recovery, return and restitution of any monies and/or assets, either domestic or foreign, which have been acquired either directly or indirectly through the scheme to defraud set forth in the Indictment, including the execution of any necessary waivers, releases, or other documents required for such recovery and return of monies and/or assets. WEINBERGER further agrees to fully disclose to the United States and the U.S. Probation Office the source and location of all monies and/or assets over which he has control and those which are held or controlled by his nominees (emphasis added).

---

**6.** Petitioner also points out that the Court concluded that he did not have the resources to pay a fine. He neglects to follow that argument to its logical complement which is that any limited resources to which he might have access should be applied to making his victims whole to the extent possible rather than paying a punitive fine to the United States. *See also* 18 U.S.C. § 3572(b).

**7.** The government correctly points out that Petitioner earned $68,000 in 1988 prior to his commencement of the offenses of conviction.

Petitioner's third claim for relief is also addressed to a restitution issue in connection with the tax count. He complains that the tax restitution order in his sentence incorrectly includes taxes with respect to tax year 1994, a year not included in his offenses of conviction. Petitioner posits that he "was convicted of violating 26 U.S.C. § 7201 with respect to his taxes for years 1990, 1992 and 1993." Petitioner is in error. The record reflects, and the government affirms, that Petitioner pleaded guilty to evading taxes for tax year 1993. All other counts for tax years 1990, 1991, 1992 and 1994 were dismissed pursuant to the plea agreement in this matter.

■ The sentencing order in this matter established Petitioner's tax restitution obligation at $370,624, which represents the total tax loss for all five tax years charged in the indictment. The tax loss for 1993, the tax year of conviction was $160,004. The government concedes that "a district court may order a Defendant to pay restitution conditioned upon supervised release solely for crimes of which the Defendant was actually charged and convicted." *Gall v. United States,* 21 F.3d 107, 108 (6th Cir.1994). It, therefore, joins in Petitioner's motion on this point to the extent that the restitution order for the tax count should be reduced to $160,004. This issue was raised at the time of sentencing, but withdrawn by Petitioner (Doc. No. 22 at 9). Thus, not only did Petitioner fail to preserve the issue for direct appeal, he waived this claim for collateral relief as well. Moreover, Petitioner makes no attempt to show cause for his failure to pursue this claim in a timely fashion. Were he to attempt to equate cause with mutual mistake, it would be unavailing in light of his failure to show prejudice. The Court perceives that regardless of whether the government pursues Petitioner by a criminal restitution order or civilly by administrative procedures, the fact remains that he owes the money, and he can only be made to pay what he is able.

■ The government's acquiescence in the Petitioner's request for relief does not provide the Court with any authority for relieving Petitioner of his default nor empowering the government, on the other hand, to seek redress of a sentencing error at this late stage regardless of the equities involved. The Court has searched in vain for any basis upon which to find jurisdiction to alter the sentence in this case under existing statutory or case law and finds none.[8] The few cases that discuss the government's right to seek some sort of substantive involvement in § 2255 matters are in the context of governmental requests for upward adjustments of sentences vacated or set aside upon a Petitioner's successful motion. No court has found a right in the government to seek alteration of a criminal sentence outside the provisions of 18 U.S.C. § 3582[9] and certainly not in conjunction with an unsuccessful § 2255 motion. What is well-settled, beyond peradventure, is that district courts may not modify previously imposed sentences without express statutory authority. "[T]he government may not challenge a criminal Defendant's sentence unless authorized to do so by statute, and [a] technical rule with equitable exceptions is no rule at all." *Warner v. United States,* 926 F.Supp. 1387, 1398 (E.D.Ark. 1996) (citing *Jones v. Thomas,* 491 U.S. 376, 396, 109 S.Ct. 2522, 2533, 105 L.Ed.2d 322 (1989) (Scalia, J., dissenting)). So too, the Court may not, regardless of equitable considerations grant Petitioner relief, even with the concurrence of the government, in the absence of statutory authority.

---

8. *See United States v. Harrison,* 113 F.3d 135, 137 fn. 2 (8th Cir.1997) (district court can modify a previously imposed term of imprisonment if expressly permitted by statute). *See also Gordils v. United States,* No. 95 CIV. 8034, 1996 WL 614139, at *4 (S.D.N.Y., 10–23–96); *United States v. Oliver,* 941 F.Supp. 1109, 1119 (M.D.Ala.1996).

9. *See United States v. McKinnon,* 27 F.Supp.2d 1369, 1370 (M.D.Fla.1998).

■ Lastly, Petitioner claims that the Court unconstitutionally delegated the specific terms of his restitution payment plan, a judicial function, to the Bureau of Prisons and, thereafter the Probation Department, executive branch agencies in violation of the separation of powers. Petitioner cites a number of cases in support of his contention, none of which is binding upon this Court. The government cites *United States v. Gray,* 121 F.3d 710, 1997 WL 413663 (6th Cir.1997), for the proposition that a district court may delegate the timing and scheduling of restitution installment payments to a Defendant's probation officer under the provisions of the VWPA. However, this Court has concluded *supra* that Defendant was properly sentenced under 18 U.S.C. § 3663A, the successor statute.

Petitioner claims that this issue was not raised in the trial court or on direct appeal due to ineffective assistance of counsel.

Thus, he argues that he is entitled to be relieved of the apparent waiver of the issue by virtue of his attorney's constitutionally defective representation which is the cause of his previous default. He then argues that he is prejudiced by the failure to raise the issue, but does not elaborate as to the precise manner in which he has been disadvantaged. The Court can perceive no prejudice to Petitioner and, therefore, concludes that he has failed in his burden. Additionally, it was well within the realm of reasonable professional assistance for counsel to by-pass a potential technical defect in the sentence that carried no prejudice to Petitioner as a practical matter in order to focus upon those issues that might have made a measurable difference in Petitioner's sentence. This issue has been waived. Even if the issue were not waived, it is meritless.

The parties appear to be in agreement that 18 U.S.C. §§ 3664(f) [10] and 3572(d) [11]

**10.** 18 U.S.C. § 3664(f)(1)(A) provides in pertinent part

[i]n each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.

\* \* \* \* \* \*

(2) Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—

(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;

(B) projected earnings and other income of the defendant; and

(C) any financial obligations of the defendant; including obligations to dependents.

(3)(A) A restitution order may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments.

(B) A restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments.

Subsection (k) provides further that

[a] restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. The court may also accept notification of a material change in the defendant's economic circumstances from the United States or from the victim. The Attorney General shall certify to the court that the victim or victims owed restitution by the defendant have been notified of the change in circumstances. Upon receipt of the notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.

**11.** 18 U.S.C. § 3572(d) provides

(1) A person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice,

control in a situation where a sentencing court allows a defendant to make restitution in installments over a period provided by the court. Clearly, this Court intended to afford this Petitioner the opportunity to pay his restitution obligation to the extent possible by regular installments over the term of his supervised release. *See* Transcript of Sentencing Hearing, Doc. No. 29 at 4–5. The sentencing order (Doc. No. 22 at 4) states as follows:

> [t]he Defendant shall pay restitution of $1,285,243.25 through the Bureau of Prisons Inmate Financial Responsibility Program, and thereafter according to an installment plan developed by the Defendant and the probation officer, as more fully described in this Order;

■ The Order continued as follows:

> the post-imprisonment plan to be developed by the Defendant and the probation officer will take into consideration his financial status and the needs of the Defendant's dependents.

*Id.* at 9. The Court did not give unbridled discretion to the probation officer to set the amounts and the schedule of payments. Rather, the Court obligated the probation officer to attempt to develop a schedule of payments suitable to the Defendant's means and the needs of his dependents. A failure to come to consensus

would naturally be brought to the Court's attention by the probation officer for resolution. Moreover, a lack of good faith effort on Petitioner's part to make restitution would, of course, constitute a violation of the terms and conditions of his supervised release.[12] On the other hand, should Petitioner make good faith efforts to pay his restitution obligation and yet fall short, the matter would be brought to the Court's attention as the end of his term of supervised release drew near. Then in the exercise of its discretion, recognizing the Petitioner's practical limitations, the usual result would be the termination of the period of supervised release without the full satisfaction of the restitution obligation.[13] In essence, the Court has imposed a restitution order that is due in full immediately, and if that restitution is not paid in full before the term of supervised release commences, payments are to be made in accordance with a payment schedule established by this Court upon the recommendation of the probation officer, subject to amendment during the term of supervised release as circumstances might dictate. Both the amount and the term of Petitioner's restitution have been established by the Court. Only the details of the payment have been left to the probation officer to execute subject to the Court's supervision and review.[14] The

---

the court provides for payment on a date certain or in installments. If the court provides for payment in installments, the installments shall be in equal monthly payments over the period provided by the court, *unless the court establishes another schedule.*

(2) If the judgment, or, in the case of restitution order, the order, permits other than immediate payment, the length of time over which scheduled payments will be made shall be set by the court, but shall be the shortest time in which full payment can reasonably be made.

(3) A judgment for a fine which permits payments in installments shall include a requirement that the defendant will notify the court of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay the fine. Upon receipt of

such notice the court may, on its own motion or the motion of any party, adjust the payment schedule, or require immediate payment in full, as the interests of justice require (emphasis added).

12. *See Aubin v. United States,* 943 F.Supp. 126, 127 (D.Mass.1996); *United States v. Barany,* 884 F.2d 1255, 1260 (9th Cir.1989), *cert. denied,* 493 U.S. 1034, 110 S.Ct. 755, 107 L.Ed.2d 771 (1990); *United States v. Signori,* 844 F.2d 635, 637 (9th Cir.1988); *United States v. Gray,* No. 95–1832, 1997 WL 413663 *4 (6th Cir. July 17, 1997) (unpublished decision). *See also* 18 U.S.C. §§ 3613A and 3614.

13. *See* 18 U.S.C. § 3573.

14. The executive not only dispenses the honors, but holds the sword of the community. The legislative not only commands the purse,

Court has, therefore, no more delegated or abrogated its judicial responsibilities than is typically done when the Marshal's Service is commanded to bring a prisoner before the bar. The Court need not specify the means of transportation but only the end to be accomplished, e.g. produce the prisoner at the time, date and place for that object to be attained. If the Marshal cannot accomplish that task within the time-frame established for any reason, he must report to the Court for further or modified direction. The Court has not made an unbridled delegation of authority to the Marshal in making the order by affording him a modicum of discretion in the execution of the task. Indeed, the framers of the Constitution recognized that pursuant to the separation of powers, the Judicial Branch lacked control of the purse strings (allocated to the legislative branch) or the means to execute its own orders (allocated to the executive branch). Thus, it is entirely proper for this Court to delegate the particulars of the collection of restitution to the probation officer in cooperation with Petitioner.[15]

 A subpart of Petitioner's last issue is the claimed unconstitutional delegation of judicial authority to the Bureau of Prisons to collect a portion of the restitution order through the Inmate Financial Responsibility Program ("IFEP"). For all of the reasons stated above, this argument is also meritless. Moreover, as the government points out in its response, the IFRP is an established plan with written criteria whose terms are implicitly adopted by the

Court in its Order. Thus, the initial collection of Petitioner's restitution obligation through the IFRP complies with 18 U.S.C. § 3664(f), and is not an unconstitutional delegation of authority under any reading.[16]

Petitioner has not requested an evidentiary hearing and, indeed, an evidentiary hearing is required only if the record is not fully developed or if conflicting facts appear in the record. *See Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Here the record is fully developed and there are no conflicting facts. Thus, Petitioner is not entitled to an evidentiary hearing.

Petitioner's motion is in all respects meritless.

IT IS THEREFORE ORDERED THAT:

1. Petitioner's Motion to Vacate Plea and Sentence pursuant to 28 U.S.C. § 2255 is DENIED.

2. A certificate of appealability shall issue. *See* 28 U.S.C.A. § 2253(c); Fed. R.App.P. 22(b).

3. The Court certifies pursuant to 28 U.S.C.A. § 1915(a)(3) that an appeal of this Order would be taken in good faith and, therefore, GRANTS Petitioner leave to appeal *in forma pauperis*. *See* Fed. R.App.P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir.1997).

but prescribes the rules by which the duties and rights of every citizen are to be regulated. The judiciary on the contrary has no influence over either the sword or the purse, direction either of the strength or of the wealth of society, and can take no active resolution whatever. It may truly be said to have neither FORCE nor WILL, but merely judgment; and must ultimately depend upon the aid of the executive arm even for the efficacy of its judgments. Publius: The Federalist 78 (Alexander Hamilton), May 28, 1788.

15. The Court perceives the actual bases of Petitioner's claim to be the overall amount of

restitution rather than the means by which it is to be accomplished.

16. *See Mujahid v. Crabtree*, 999 F.Supp. 1398, 1403 (D.Or.1998) (finding collection activities, establishing and modifying payment schedule for criminal monetary payments are not essential attributes of judicial power to be exercised only by Article III Judges) (citing *Henzel v. Crabtree*, W97–1234–PA (D.Or. March 18, 1998) (unpublished decision)), *aff'd* No. 98–35422, 1999 WL 65104 (9th Cir. Jan. 21, 1999) (unpublished decision), *aff'd* No. 98–35489, 1999 WL 65105 (9th Cir. Jan. 21, 1999) (unpublished decision).