**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**William E. WILLIAMS, Jr., Defendant–Appellant.**

**No. 97–4296.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 6, 1998.

Decided Sept. 10, 1998.

Robert E. Lindsay (briefed), Michael E. Karam (argued and briefed), U.S. Dept. of Justice, Appellate Section Tax Div., Washington, DC, Alan Hechtkoff (briefed), Dept. of Justice, Washington, DC, for Plaintiff–Appellee.

Richard A. Cline (argued and briefed), Mitchell, Allen, Catalano & Boda, Columbus, OH, for Defendant–Appellant.

Before: KRUPANSKY, NORRIS, and SILER, Circuit Judges.

## OPINION

SILER, Circuit Judge.

Defendant William E. Williams, Jr. appeals his sentence of eighteen months for tax evasion and bankruptcy fraud. The only issue on appeal is whether the district court erred by failing to group the offenses under USSG § 3D1.2(d). As set forth below, we AFFIRM.

## I.

Williams was indicted on: (1) three counts of tax evasion in violation of 26 U.S.C. § 7201; (2) one count of obstruction of the implementation of the internal revenue laws in violation of 26 U.S.C. § 7212(a); (3) four counts of bankruptcy fraud in violation of 18 U.S.C. § 152; and (4) two counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). The bankruptcy fraud charges alleged misrepresentations in a 1990 bankruptcy petition in which Williams purportedly falsely claimed that he had filed tax returns for 1986 and 1987, and falsely reported total revenues and expenses for May, July, and August 1990.

Williams pled guilty to two of the counts, one for tax evasion for 1990 and one for bankruptcy fraud arising out of his false statement that he had filed his 1986 and 1987 income tax returns. In exchange for Williams's guilty plea, the government dropped the remaining eight counts. The presentence report calculated a total Guidelines offense level of thirteen which provided a sentencing range of twelve to eighteen months.

At the sentencing hearing, Williams objected to the calculation of the offense level, arguing that the tax evasion count and the bankruptcy fraud count should have been grouped under USSG § 3D1.2(d), which would have placed the offenses at level twelve, with a sentencing range of ten to sixteen months. The court, however, rejected this argument, finding that the two offenses involved distinct victims and distinct harms, and were not part of a common scheme or plan.

## II.

The sole issue Williams raises is one of law subject to *de novo* review. *United States v. Gort–DiDonato,* 109 F.3d 318, 320 (6th Cir.1997).

Williams argues only that the district court erred in failing to group the two charges to which he pled. He specifically contends that because the Guidelines sections applicable to his plea-based convictions fall under the "are to be grouped" rubric in USSG § 3D1.2(d), the district court had no choice but to group his offenses.

Section 3D1.2 provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." Counts will implicate "substantially the same harm" when they involve (a) "the same victim and the same act or transaction[,]" (b) "the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan[,]" (c) one count which "embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts[,]" or (d) counts for which "the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." It is this last measure of "sub-

stantially the same harm" that is relevant to Williams's appeal.

Subsection (d) further divides Guidelines sections covering classes of harms more or less susceptible to aggregation into three broad categories—those which "are to be grouped," those "specifically excluded" from aggregated treatment, and those subject to grouping on a "case-by-case" basis. USSG § 3D1.2(d). Among the Guidelines sections "to be grouped" are §§ 2F1.1 and 2T1.1, the two sections under which the district court sentenced Williams. Williams claims that on the basis of the mere fact that §§ 2F1.1 and 2T1.1 fall into this category, the district court had no choice but to group the counts, and that the court therefore erred in failing to do so.

Williams's argument is unavailing. The language of § 3D1.2(d) does not suggest the construction Williams propounds. Rather, subsection (d) requires a two-part inquiry. First, the court must make a threshold determination as to whether the offense levels for the charges are susceptible to aggregation, *i.e.*, the measures for the levels of the various charges are the same or similar, or the offenses are ongoing or continuous in nature. Second, we ask which category covers the relevant Guidelines sections, *i.e.*, "are to be grouped," "specifically excluded," or "case-by-case." By this reading of subsection (d), the district court need not even reach the second part of the inquiry if the offenses are not aggregable under the threshold test.[1]

The bulk of the courts to have considered the proper construction of subsection (d) have concluded that there is no automatic grouping of counts simply because those counts are on the "are to be grouped" list. *See United States v. Taylor*, 984 F.2d 298, 303 (9th Cir.1993); *United States v. Seligsohn*, 981 F.2d 1418, 1425 (3d Cir.1992); *United States v. Harper*, 972 F.2d 321, 322 (11th Cir.1992); *United States v. Johnson*, 971 F.2d 562, 576 (10th Cir.1992). Most of these courts have held that where the applicable Guidelines sections for separate counts measure the harm differently, those counts need not be grouped. *Taylor*, 984 F.2d at 303 (holding "that grouping under section 3D1.2(d) is not appropriate when the guidelines measure harm differently"); *Harper*, 972 F.2d at 322 (noting that crimes involving qualitatively distinct harms are not subject to grouping); *Johnson*, 971 F.2d at 576 ("Section 3D1.2(d) was intended to be used when the measurement of harm for one offense is essentially equivalent to the measurement of harm for other related offenses."). Indeed, the Third Circuit has specifically held that fraud counts, for which the relevant Guideline is § 2F1.1, and tax evasion counts, for which the relevant Guideline is § 2T1.1, are so different that grouping would be inappropriate. *Seligsohn*, 981 F.2d at 1425.[2]

1. The commentary relevant to this subsection makes no mention of this reading of the Guideline. Rather, it relies on a "same general type" test not contained in the text of subsection (d) to determine the propriety of grouping under the subsection. USSG § 3D1.2(d), comment. (n. 6). Application Note 6 states that:

> [c]ounts involving offenses to which different offense guidelines apply are grouped together under subsection (d) if the offenses are of the same general type and otherwise meet the criteria for grouping under this subsection.... The "same general type" of offense is to be construed broadly, and would include, for example, larceny, embezzlement, forgery, and fraud.

*Id.* Presumably, the drafters added this illustration of "same general type" in order to reinforce the notion that property crimes, broadly defined, are to be grouped, notwithstanding the fact that certain of the offenses listed do not fall within the definition of property crimes elsewhere in the Guidelines. *See, e.g.*, USSG ch. 2, pt. B (setting forth offenses involving property); USSG ch. 2, pt. F (setting forth offenses involving fraud or deceit).

Although this "same general type" test does not conflict with the Guideline language, it does little to clarify the ambiguity in the Guideline. In any event, the construction of subsection (d) set forth in the text above is consistent both with the Guideline and its commentary.

2. The court in *Seligsohn* reached this conclusion not by application of subsection (d)'s two-part analysis, but rather by determining that the tax evasion and fraud counts involved in that case affected different victims, the counts were generally different in nature, and "were not an essential part of or related to" one another. *Seligsohn*, 981 F.2d at 1425. Thus, although *Seligsohn* states that it relies on the language in Application Note 6 indicating that grouped offenses should be "of the same general type," it appears that the Third Circuit's decision in that case rests more on the grouping criteria in sub-

As applied here, the language of the Guideline supports the district court's refusal to group Williams's counts for purposes of sentencing. As the presentence report noted, the Guidelines do not calculate the offense level for the manner of bankruptcy fraud in which Williams engaged on the basis of the amount of loss. Williams's bankruptcy fraud did not misrepresent the funds available to the bankrupt estate in violation of 18 U.S.C. § 152(1), but rather he made a "false oath or account in or in relation to" a case filed under Title 11 of the United States Code in violation of 18 U.S.C. § 152(2). On the other hand, Williams's tax evasion offense level derives from the "tax loss," *i.e.*, the amount of harm, in dollar terms, the government suffered. USSG §§ 2T1.1(a), 2T4.1. The offense levels for the two counts thus are not measured in the same fashion, and accordingly do not pass the threshold test set forth in USSG § 3D1.2(d).

**AFFIRMED.**

sections (a)-(c) than on subsection (d). To this extent, *Seligsohn* seems to ignore subsection (d) altogether.