*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0355P (6th Cir.)
File Name: 01a0355p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

BARRETT N. WEINBERGER,
    *Petitioner-Appellant,*

    *v.*

No. 99-4553

UNITED STATES OF AMERICA,
    *Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 99-00116—Sandra S. Beckwith, District Judge.

Argued: January 23, 2001

Decided and Filed: October 5, 2001

Before: BOGGS and MOORE, Circuit Judges; and COHN,
Senior District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Christopher K. Barnes, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. Barrett N. Weinberger, Cincinnati, Ohio, pro se. **ON BRIEF:**

———————————————

[*] The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

1

Christopher K. Barnes, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.  Barrett N. Weinberger, Cincinnati, Ohio, pro se.

BOGGS, J., delivered the opinion of the court.  COHN, D. J. (pp. 25-28), delivered a separate concurring opinion. MOORE, J. (pp. 29-34), delivered a separate opinion concurring in part and dissenting in part.

————————————

**OPINION**

————————————

BOGGS, Circuit Judge.  Petitioner-appellant, Barrett N. Weinberger, a disbarred lawyer acting pro se, appeals a decision of the district court denying his motion to vacate his sentence under 28 U.S.C. § 2255.  For the following reasons, we affirm in part and reverse in part.

I

In 1989, Weinberger began doing legal work for Dorette K. Fleischmann; her daughter, Joan Fleischmann Tobin; and, after Dorette's death, the Dorette K. Fleischmann estate. From April 1990 through December 1994, Weinberger, without his clients' knowledge and consent, fraudulently diverted over $1 million from his clients' funds to his own personal use.  Weinberger also evaded federal income taxes on the money he embezzled from his clients.

On October 1, 1997, Weinberger was indicted by a federal grand jury in the Southern District of Ohio on a thirteen-count indictment.  Counts 1 and 3 charged Weinberger with mail fraud, in violation of 18 U.S.C. § 1341.  Counts 2 and 4 charged Weinberger with wire fraud, in violation of 18 U.S.C. § 1343.  Counts 5 through 8 charged Weinberger with interstate transportation of money taken by fraud or interstate transportation of money in execution of fraud, in violation of 18 U.S.C. § 2314. Counts 9 through 13 charged Weinberger with tax evasion, in violation of 26 U.S.C. § 7201.  The

Sentencing a defendant is a core judicial act. As the statutory language makes clear, deciding whether to impose restitution and at what rate is a part of the sentencing process. *See, e.g.*, 18 U.S.C. § 3663(a)(1) (1994) (stating that when sentencing a defendant, court may order that the defendant make restitution to victim of offense). Given that the imposition of a restitution order is an element of sentencing, I agree with the Fourth Circuit that the applicable statutes must be read as conferring exclusive authority upon the courts with regard to their power to set the amount of restitution and the payment schedule. *See Johnson*, 48 F.3d at 808. Of course, courts may use "nonjudicial officers to *support* judicial functions, as long as a judicial officer retains and exercises ultimate responsibility." *Id.* at 809. But they may not delegate their authority to set the timing of restitution payments to a non-Article III entity without running afoul of the Constitution.

While I appreciate the potentially difficult task that the district court may face in setting a reasonable restitution schedule at sentencing, particularly when, as Judge Cohn notes in his concurring opinion, the defendant faces a lengthy incarceration period and the court cannot anticipate when the defendant will likely be able to obtain employment so as to begin making restitution upon his release, I believe that the Constitution and the plain language of the applicable statutes will not admit of any other arrangement. Therefore, I respectfully dissent from Part III.D of the majority's opinion.

---

judiciary "exercise ultimate responsibility for resolving the case or controversy." *See Johnson*, 48 F.3d at 809. Therefore, the district court may not delegate the final authority to determine the restitution payment schedule, although the district court may, consistent with Article III, review and approve a payment plan initially conceived by a probation officer.

indictment alleged that between April 1990 and December 1994, Weinberger embezzled approximately $1,140,000 from his clients. In addition, Weinberger failed to pay income taxes totaling $370,624 on the embezzled funds.

On February 6, 1998, Weinberger entered into a plea agreement. Weinberger pleaded guilty to Counts 1, 6, and 12 of the indictment, the first two counts charging mail fraud and interstate transportation of money in execution of fraud and the third charging tax evasion relating to Weinberger's 1993 federal income tax return. The remaining counts were dismissed. The plea agreement provided that Weinberger would cooperate with the government and the court, pursuant to 18 U.S.C. §§ 3663A and 3664, in the recovery, return, and restitution of any monies acquired through Weinberger's scheme to defraud. Paragraphs 8 and 9 of the plea agreement set forth the joint understanding of Weinberger and the government regarding the calculation of Weinberger's total offense level under the United States Sentencing Guidelines.

At Weinberger's sentencing on June 29, 1998, Weinberger's counsel objected to the application of the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, which went into effect on April 24, 1996, after Weinberger's offense was completed. The district court overruled the objection as moot on the basis that the court was applying the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663, which was in effect in 1994, in ordering Weinberger to pay full restitution to the victims and to the IRS. Weinberger's counsel did not object to the offense level calculation, specifically, the issue of grouping the fraud and tax counts pursuant to the plea agreement. Weinberger's total offense level was 20 and his criminal history category was I, resulting in a sentencing range of 33-41 months. The district court sentenced Weinberger to 41 months of imprisonment, followed by three years of supervised release. In addition, the court ordered Weinberger to pay $370,624 in restitution to the IRS as a special condition of supervised release, and to pay $1,285,243.25 to the fraud victims immediately. Assuming that payment would not be

made immediately, the district court ordered that Weinberger make restitution payments through the Inmate Financial Responsibility Program of the Bureau of Prisons, and thereafter, according to an installment plan developed by Weinberger and his probation officer. Weinberger's counsel did not object to the amount of the restitution payment to the IRS, nor did he object to the district court's order regarding installment restitution payments.

Weinberger's counsel did not file a direct appeal regarding Weinberger's conviction and sentence. On February 19, 1999, Weinberger filed a pro se Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. Weinberger's motion was not directed at the question of his guilt, but at a variety of sentencing issues. The district court denied Weinberger's motion on October 21, 1999. Weinberger filed a timely notice of appeal on December 16, 1999 in forma pauperis. On January 31, 2000, the district court issued a certificate of appealability, certifying four issues for appellate review.

## II

This court reviews denials of petitions under 28 U.S.C. § 2255 de novo, while examining the district court's factual findings for clear error. *See Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). When reviewing the district court's application of the United States Sentencing Guidelines, this court reviews its factual findings for clear error and its legal conclusions de novo. *See United States v. Rutana*, 18 F.3d 363, 365 (6th Cir. 1994). The district court's decision to refuse to group offenses pursuant to USSG §3D1.2 is a legal determination that is reviewed de novo. *See United States v. Williams*, 154 F.3d 655, 656 (6th Cir. 1998). With regard to orders of restitution, this court reviews the district court's order of restitution for abuse of discretion, but reviews the district court's application of a statute de novo. *See United States v. Blanchard*, 9 F.3d 22, 24 (6th Cir. 1993).

n.25 (11th Cir. 1997) (circuit precedent permits district court to delegate setting of restitution schedule); *United States v. Barany*, 884 F.2d 1255, 1259-60 (9th Cir. 1989), *cert. denied*, 493 U.S. 1034 (1990) (holding, with respect to the now-repealed Federal Probation Act, 18 U.S.C. § 3651, that district court may leave restitution schedule to probation officer's discretion), and to the Bureau of Prisons, *see Montano-Figueroa v. Crabtree*, 162 F.3d 548, 550 (9th Cir. 1998) (fine).

Upon consideration of the case law, I believe that the position adopted by the substantial majority of circuits is the better one. The applicable statutory language makes clear that it is the province of "the court," and the court alone, to fix the amount of restitution, determine whether the restitution should be paid in a lump sum or in installments, and then, if the latter, establish the amount of each installment. *See* 18 U.S.C. § 3663(f)(1) (1994) (stating that the "the court may require that [the] defendant make restitution . . . within a specified period or in specified installments"); 18 U.S.C. § 3572(d) (1994) (noting, in relation to a defendant sentenced to pay a monetary penalty, that "the court" will provide for payment either on a date certain or in equal monthly installments "over the period provided by the court," unless "the court" decides otherwise); *see also* 18 U.S.C.A. § 3664(f) (2000) (current statute echoing language in former § 3663(f)); 18 U.S.C.A. § 3572(d)(1)-(2) (2000) (stating in current statute that, for defendant required to pay restitution, "court" will provide for payment on a date certain or in equal monthly installments unless "the court establishes another schedule" and that "length of time over which scheduled payments will be made shall be set by the court"). Only when the court has established the restitution amount and payment schedule may the Bureau of Prisons or a probation officer then enforce that order.[2]

---

[2] I note that while 18 U.S.C. § 3603(9) (1994) (currently codified at 18 U.S.C.A. § 3603(10) (2000)) permits a probation officer to "perform any other duty that the court may designate," this statutory grant of authority is implicitly cabined by the constitutional requirement that the

Prisons and the defendant's probation officer the task of setting his restitution payment schedule. There is presently a split among the courts of appeals on this issue.[1] The Second, Third, Fourth, Fifth, and Seventh Circuits have held that it is impermissible to delegate the task of scheduling post-incarceration restitution payments to a probation officer. *See United States v. Coates*, 178 F.3d 681, 685 (3d Cir. 1999) (explaining that Constitution and applicable provision of the Mandatory Victims Restitution Act, 18 U.S.C. § 3664(f)(2), like its counterpart in the Victim and Witness Protection Act, 18 U.S.C. § 3663(f)(1) (1994), forbids district court to delegate authority to set payment schedule); *United States v. Mohammad*, 53 F.3d 1426, 1438-39 (7th Cir. 1995); *United States v. Johnson*, 48 F.3d 806, 808-09 (4th Cir. 1995) (holding that "making decisions about the amount of restitution, the amount of installments, and their timing is a judicial function and therefore is non-delegable"); *United States v. Porter*, 41 F.3d 68, 71 (2d Cir. 1994); *United States v. Albro*, 32 F.3d 173, 174 (5th Cir. 1994); *see also United States v. Merric*, 166 F.3d 406, 409 (1st Cir. 1999) (holding that district court may not delegate to probation officer authority to set payment schedule for a fine). Likewise, the Second, Fourth, and Seventh Circuits have held that it is similarly impermissible to delegate the scheduling of restitution to the Federal Bureau of Prisons while the defendant is incarcerated. *See United States v. Pandiello*, 184 F.3d 682, 688 (7th Cir. 1999) (noting that "concerns about shifting responsibility from the Article III judge to another entity" are the same whether the district court delegates its authority to a probation officer or the Inmate Financial Responsibility Program); *United States v. Mortimer*, 94 F.3d 89, 91 (2d Cir. 1996); *United States v. Miller*, 77 F.3d 71, 78 (4th Cir. 1996). Only the Ninth and Eleventh Circuits have adopted contrary rules with regard to delegation to a probation officer, s*ee United States v. Fuentes*, 107 F.3d 1515, 1529

---

[1]As the majority noted, this circuit has not yet commented upon the delegation question in a published opinion. The unpublished opinions which the majority finds persuasive are not binding on any court in this circuit.

### III

Under 28 U.S.C. § 2255, "[A] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." A motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid. *See United States v. Addonizio*, 442 U.S. 178, 185-86 (1979). Sentencing challenges generally cannot be made for the first time in a post-conviction § 2255 motion. *See Grant v. United States*, 72 F.3d 503, 505-06 (6th Cir. 1996). Normally, sentencing challenges must be made on direct appeal or they are waived. *See United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir. 1994).

Weinberger argues that the four sentencing rulings forming the basis for his motion were not challenged at the time of his sentencing and/or on direct appeal as a result of the ineffective assistance of his trial counsel. The Supreme Court and this court have held that challenges that cannot otherwise be reviewed for the first time on a § 2255 motion can be reviewed as part of a successful claim that counsel provided ineffective assistance under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 694 (1984). *See United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Grant*, 72 F.3d at 506; *Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993).

Weinberger presents four claims on appeal, challenging: (1) the calculation of his offense level for sentencing; (2) the restitution order to his fraud victims; (3) the restitution order to the IRS; and (4) and the method for scheduling his

restitution payments.[1] Although Weinberger's § 2255 motion to the district court was based on ineffective assistance of counsel, he only applied this theory explicitly to his first and fourth claims. Weinberger did not state the theory of ineffective assistance of counsel to support his second and third claims. Since Weinberger did not present a proper basis for bringing these claims in his § 2255 motion, the district court rejected them.

On appeal, Weinberger applies the theory of ineffective assistance of counsel to all four of his claims. In general, "[i]ssues not presented to the district court but raised for the first time on appeal are not properly before the court." *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993). This case, however, is one of those "exceptional cases" when the rule preventing issues from being raised for the first time on appeal would result in a "plain miscarriage of justice." *Ibid*. In light of the circumstances of this case, including the fact that Weinberger is proceeding pro se, we conclude that Weinberger can extend the issue of ineffective assistance of counsel, already raised below on two of his claims, to his

---

[1] In a citation updating its brief, the government relies upon *United States v. Kramer*, 195 F.3d 1129 (9th Cir. 1999), for the proposition that a petitioner cannot challenge a restitution order in a § 2255 petition because such a challenge does not claim a right to be released from custody.

This circuit has not come to the same conclusion. In *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995), this court rejected a prisoner's challenge in a § 2255 motion to the imposition of the costs of his imprisonment and supervised release--not a restitution order--on the grounds that such a challenge does not meet the "in custody" requirement of § 2255. Other circuits have relied upon *Watroba* in concluding that petitioners cannot challenge a restitution order in a § 2255 motion, because such an order is not a sufficient restraint on liberty to meet the "in custody" requirement. *See Kramer*, 195 F.3d at 1130; *Blaik v. United States*, 161 F.3d 1341, 1343 (11th Cir. 1998); *Smullen v. United States*, 94 F.3d 20, 25-26 (1st Cir. 1996). We will follow this court's precedent in *Ratliff*, 999 F.2d at 1025-27, which *Watroba* did not purport to overrule, allowing a petitioner to contest a restitution order under § 2255 based on a meritorious ineffective assistance of counsel claim.

---

from prison, nor are any other facts in the record which could support the district court's order of full restitution, notwithstanding Weinberger's education and his talents.

There is recent case law in our circuit which states that "a district court must have, at a minimum, some indication that a defendant will be able to pay *the amount of restitution ordered*." *United States v. Dunigan*, 163 F.3d 979, 982 (6th Cir. 1999) (emphasis added). That panel also noted that "ordering restitution in an amount that a defendant cannot possibly pay 'threatens respect for judicial orders generally' and provides the defendant with 'less incentive to seek remunerative, rehabilitative, and non-criminal employment.'" *Id.* (citing *United States v. Fuentes*, 107 F.3d 1515, 1529 n.26 (11th Cir.1997)). In this case, I believe it is clear, as the probation office concluded, that the defendant will have the ability to pay *some* amount of restitution, but that the district court's order of full restitution, which is premised on the defendant's ability to earn almost six times his income prior to his criminal conviction, does not adequately contemplate the defendant's future earning ability. Although I cannot rule out the possibility in every case, I believe that, in most cases, it is highly unlikely that *any* defendant could earn substantially more than he earned prior to his incarceration immediately following his release from prison, much less nearly six times the amount of his previous legal income. Because I do not believe the district court had any indication that the defendant in this case will have the ability to earn over one million dollars in five years, I believe that the district court's order of full restitution "threatens respect for judicial orders generally" and is an abuse of discretion. I therefore join the majority in reversing the district court's order of full restitution and remanding for reconsideration of the amount of restitution.

## II. Delegation of Authority to Set Restitution Payment Schedule

I disagree with the majority's determination that it is permissible for the district court to delegate to the Bureau of

by the statute would require Weinberger to pay over $200,000 a year, or to earn over $400,000 pre-tax dollars per year immediately following his release from a 41-month prison sentence, even accounting for the district court's $370,624 erroneous order of restitution to the IRS. In light of the fact that this defendant never legally earned more than $68,000 in a year and is now disbarred from his former profession, there is no indication that the defendant would be able to earn *almost six times the amount he earned prior to his criminal conviction* upon his release from prison.

The district court's only analysis of Weinberger's future earning potential was to note at the sentencing hearing that he was an "exceptional person, talented, intelligent, with many options open to him," J.A. at 72, and to state in its order of judgment that it had considered the probation office's report on the defendant's financial situation and prospects for future employment, J.A. at 67. The probation office's report on which the district court relied noted only that Weinberger "is well educated and capable of obtaining and maintaining gainful employment. As a result, he is capable of paying restitution." J.A. at 174. While it is true that a defendant's intelligence, education, and employment record are appropriate factors for a district court to consider when fashioning a restitution order, *see United States v. Sanders*, 95 F.3d 449, 457 (6th Cir. 1996), the invocation of these factors should not insulate from meaningful review the district court's order of a specific amount of restitution. The district court's reliance on these factors merely indicates to this court that the district court properly considered whether the defendant could pay restitution at all. *See id.* at 456-57. In order for this court to conclude that the district court did not abuse its discretion in setting the amount of restitution, there must be some evidence before the district court, whether in the presentence report, or in any other submission to the court, that the defendant has the potential to earn the amount of money required to pay off the order of restitution. The fact that Weinberger earned $68,000 in one year prior to his criminal activities does not support the district court's conclusion that he can earn over $400,000 upon his release

second and third claims relating to his restitution orders to his fraud victims and the IRS.

To establish ineffective assistance of counsel, Weinberger must demonstrate "that counsel's performance was deficient and that the deficient performance was prejudicial." *Ratliff*, 999 F.2d at 1026. In order to establish prejudice, Weinberger must show a reasonable probability that, but for counsel's errors, Weinberger's sentence would have been different. *See Strickland*, 466 U.S. at 694.

The government does not contest that Weinberger's trial counsel was deficient by not challenging the portions of Weinberger's sentence being appealed here, either at the time of Weinberger's sentencing and/or on direct appeal. The core of the disagreement between Weinberger and the government is whether Weinberger was prejudiced. The government argues that, with regard to three of the four sentencing rulings, Weinberger cannot demonstrate a reasonable probability that his trial counsel's failure to challenge these rulings would have resulted in a different sentence. The government agrees with Weinberger's objection to the amount of his restitution order to the IRS, however.

Weinberger is unable to prove that he was prejudiced with regard to two of his four sentencing objections. Therefore, we need not determine if his trial counsel's performance was deficient with regard to the two claims in which Weinberger was not prejudiced. In terms of his claims regarding his restitution orders to his victims and to the IRS, Weinberger is able to demonstrate both that his counsel's performance was deficient and that he was prejudiced.

A

In his first challenge to his sentence, Weinberger asserts that the district court acted improperly by not grouping his tax and fraud counts for the purposes of calculating an adjusted offense level for sentencing. The district court grouped Counts 1 and 6 of Weinberger's conviction, under which

Weinberger was found guilty of mail fraud, in violation of 18 U.S.C. § 1341, and interstate transportation of money, in violation of 18 U.S.C. § 2314. Weinberger argues that the final count of his conviction (Count 12), under which he was convicted of tax evasion in violation of 26 U.S.C. § 7201, should have been grouped with the first two counts.

The following is a summary of the sentencing calculation used by the district court:

| | |
|---|---|
| Base Level: Counts 1 and 6 (Mail Fraud) | 21 |
| Base Level: Count 12 (Tax Evasion) | 17 |
| §2T1.1(b)(1) enhancement (because Weinberger evaded income derived from criminal conduct) | 2 |
| Sub-Total | 19 |
| Highest Offense Level: Counts 1 and 6 | 21 |
| §3D1.4 Multi-Group Adjustment (because offense level of tax count (19) was within four levels of offense level of fraud count (21)) | 2 |
| Sub-Total | 23 |
| Acceptance of Responsibility | -3 |
| FINAL ADJUSTED LEVEL | 20 |

Weinberger presents two independent, but related arguments contesting his sentencing calculation. First, Weinberger contends that his tax evasion count (Count 12) should have been grouped with his other two counts (Counts 1 and 6). If the three counts were grouped, Weinberger's base offense level would be 21 and he would not receive a multi-group enhancement. After his three-level reduction for acceptance of responsibility, his final adjusted offense level would be 18, resulting in a sentencing range of 27-33 months. Instead, Weinberger was sentenced on the basis of a final adjusted offense level of 20, resulting in a sentencing range of 33-41 months. Weinberger was sentenced to 41 months of imprisonment. Second, Weinberger claims that the criminal conduct underlying his fraud conviction was counted twice

---

### CONCURRING IN PART, DISSENTING IN PART

---

KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part. In Part I of this opinion, I write separately to explain my agreement with the majority that the district court abused its discretion by ordering restitution in the amount of $1,285,243.25 without considering adequately the defendant's earning ability. In Part II of this opinion, I express my disagreement with the majority's determination that a district court may delegate the task of setting a defendant's restitution payment schedule to the Bureau of Prisons while the defendant is incarcerated, and to a probation officer upon the defendant's release. Because I believe that the district court's delegation of authority in setting the defendant's restitution payment schedule was improper, I respectfully dissent from Part III.D of the majority opinion.

### I. Amount of Restitution

I agree that the district court properly ordered restitution under the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663 (1994), as opposed to the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, but that the district court abused its discretion when setting the amount of restitution. According to the VWPA, the sentencing court, when deciding whether to assess restitution, must consider "the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and *earning ability of the defendant* and the defendant's dependants, and such other factors as the court deems appropriate." 18 U.S.C. 3664(a) (1994) (emphasis added).

By requiring Weinberger to pay $1,285,243.25 in restitution within five years from his release from prison, *see* 18 U.S.C. § 3663(f)(2)(B) (1994), the district court failed to consider adequately the defendant's "earning ability." Complying with the restitution order within the five-year time period mandated

reasonable payment schedule is implicitly placed on the defendant, who can always avail himself of the district court in the event of problem.  Clearly, the district court has the final authority on the restitution payment schedule and has not "delegated" its judicial role to the probation officer.

In sum, I do not consider permitting a probation officer to establish a restitution payment schedule, after the restitution amount is set by the district court, to be a "delegation" of judicial function, but rather, a realistic way of dealing with the uncertainties of the future, particularly the ability of the defendant to meet the financial component of his sentence. Catherine M. Goodwin, *Looking at the Law*, 64, no. 1 FED. PROBATION 62 (2000).

toward his sentence:  (1) for the base level 21 calculation for the fraud offense and (2) as a specific offense characteristic of the tax evasion count and its two-level statutory enhancement under USSG §2T1.1(b)(1).  Weinberger appears to raise the double counting issue in two respects:  primarily to support his argument that the tax evasion count should be grouped with the two other counts of his conviction, but alternatively to argue that even if the tax evasion count is not grouped, the sentencing calculation as it stands is improper.

Before reaching the grouping issue, we will address Weinberger's argument that the district court's sentencing calculation was improper because the court double counted the criminal conduct underlying Weinberger's fraud conviction.   We note that this court has forbidden double counting when the same conduct is penalized under two separate guideline provisions. *See United States v. Smith*, 196 F.3d 676, 681 (6th Cir. 1999) ("This Circuit has consistently been loathe to condone duplicative punishments for the same behavior when not required to do so."). Yet, we do not need to reach the issue of whether double counting occurred in this case because Weinberger's adjusted offense level would be the same regardless of whether the court applied the two-level statutory enhancement under USSG §2T1.1(b)(1) for criminal conduct underlying the tax evasion count--the proposed source of the double counting.  If the enhancement was not applied, the base offense level for Weinberger's tax evasion count would be 17.  Since 17 is within four offense levels of 21, the two-level multi-group enhancement under USSG §3D1.4 still would apply because the fraud and tax evasion counts would be within the four levels of each other. Therefore, even if there were no double counting, Weinberger's adjusted offense level still would be 20--unless, of course, the counts were grouped together.

Weinberger notes that, according to USSG §3D1.2, "[a]ll counts involving substantially the same harm shall be grouped into a single Group."  Weinberger presents two arguments in support of his claim that his fraud and tax evasion counts should have been grouped because they involve substantially

the same harm. First, Weinberger relies on USSG §3D1.2(c), which states that counts involve substantially the same harm when one count "embodies conduct which is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." Weinberger argues that the fraud and tax evasion counts involve substantially the same harm because the tax evasion count was based on income derived from the criminal conduct forming the fraud count. Relying on QUESTIONS MOST FREQUENTLY ASKED ABOUT THE SENTENCING GUIDELINES, VOL. V (March 1, 1992), Weinberger points out that the Sentencing Commission has stated that tax evasion counts should be grouped with the offense that generated the unreported income. In addition, Weinberger argues that the decision in *United States v. Haltom*, 113 F.3d 43, 44-47 (5th Cir. 1997), supports his contention that tax evasion and fraud counts that are related to each other should be grouped together. Second, Weinberger relies on USSG §3D1.2(d), which states that counts involve substantially the same harm when "the offense level is determined largely on the basis of the total amount of harm or loss." Since the offense levels of both the fraud and tax counts were determined on the basis of dollar loss, Weinberger claims they involve substantially the same harm and should have been grouped together.

Weinberger's arguments are unavailing. This court has held that USSG §3D1.2(d) does not mandate automatic grouping of counts. *See United States v. Williams*, 154 F.3d 655, 657 (6th Cir. 1998). Furthermore, where the Sentencing Guidelines measure harm differently for different counts those counts need not be grouped. *See ibid*. *Williams* is not directly on point in that it involved a decision not to group a bankruptcy fraud charge with a tax loss, but the same principles can be applied in this case. Indeed, the Third Circuit applied these principles in resolving a case with facts similar to this case. *See United States v. Vitale*, 159 F.3d 810, 813-15 (3d Cir. 1998). *Vitale* involved a defendant charged with wire fraud and tax evasion stemming from his embezzlement of $12 million from his employer in order to acquire and restore antique clocks. The *Vitale* court

information at sentencing to know what payment schedule to fix, particularly when a defendant will be sentenced to a term of imprisonment. The defendant's evolving ability to pay is best known by the probation officer during supervision." *Criminal Monetary Penalties: A Guide to the Probation Officer's Role IV-1*, Monograph 114, Federal Corrections and Supervision Division, Administrative Office of the United States Courts. Thus, rather than setting a speculative restitution payment schedule at the time of sentencing, and then later modifying the schedule, the district court allowed for the defendant and the probation officer to set a reasonable schedule based on current circumstances in the first instance.[5]

The dissent underappreciates the role of the probation officer and does not take into account what a burdensome proposition it would be to require the district courts to micro-manage each defendant whose sentence has a financial component. Indeed, the legislative history of 18 U.S.C. § 3572 specifically states that the statute is intended to "eliminate the...requirement that the specific terms of an installment schedule to be fixed by the court. The court is thus able to delegate the responsibility for setting specific terms to a probation officer." H.R. Rep. No. 100-390, § 7 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2137, 2143.

Further, concerns that probation officers will abuse their authority are unfounded. Even where a probation officer (working with the defendant) is to establish a restitution payment schedule, should any problems or disagreements arise, the district court must resolve the dispute. Indeed, the Judgment here expressly provides that the payment schedule is to be developed *by defendant, with his probation officer*. Accordingly, in part the responsibility of devising a

---

[5]In determining a defendant's ability to pay, the probation officer compiles data through interviews, financial record verification, personal financial statements, and asset and liability criteria. *Criminal Monetary Penalties: A Guide to the Probation Officer's Role IV-1*, Monograph 114, Federal Corrections and Supervision Division, Administrative Office of the United States Courts.

Here, at sentencing, the district court here made no mention of the schedule under which the defendant was to pay the amount of restitution ordered.  The Judgment Including Sentence Under the Sentencing Reform Act entered by the district court states:

> The Defendant shall pay restitution of $1,285,243.25 through the Bureau of Prisons Inmate Financial Responsibility Program,[4] and thereafter according to an installment plan *developed by the Defendant and the probation officer*, as more fully described in this order;.
> . . .

(JA at 62, emphasis and footnote added)

The Judgment further goes on to say:

> Finally, the Defendant objects that when ordering restitution, the Court must consider his ability to pay and the needs of his dependents.  The Probation Officer has provided the Court with a detailed report on the Defendant's financial situation and his prospects for future employment.   The Court has taken this information into consideration in determining the appropriate restitution order.  Furthermore, the post-imprisonment plan to be developed *by the Defendant and his probation officer* will take into consideration his financial status and the needs of the Defendant's dependents.  Accordingly, the Defendant's objection is **MOOT**.

(JA at 67, first emphasis added)

This procedure recognized the practicality of deferring the setting of the restitution payment schedule until closer in time to when the defendant would realistically be making such payments, as opposed to setting a rigid schedule at the time of sentencing.  Indeed, "Courts generally do not have enough

---

[4]28 C.F.R. § 545.11.

determined that the wire fraud and tax evasion counts, while related to each other, were not so closely related that they should have been grouped together. *See id.* at 815.  The court rejected the reasoning of *Haltom*, 113 F.3d at 46, which Weinberger relies upon for the principle that tax and fraud counts that are related to each other should always be grouped together.  In addition, the court distinguished the facts of *Haltom*, noting that in *Haltom*, 113 F.3d at 47 n.5, the enhancement under USSG §2T1.1(b)(1) brought the tax count within four levels of the fraud count.  Therefore, the decision not to group the counts together resulted in a two-level enhancement under USSG §3D1.4.  As discussed above, although the §2T1.1(b)(1) enhancement was applied by the district court in this case, Weinberger, like Vitale, still would have received the §3D1.4 enhancement regardless of the application of the §2T1.1(b)(1) enhancement, because the offense level for the tax count was within four levels of the offense level for the fraud count.  The *Vitale* court also refused to adopt the proposition in QUESTIONS MOST FREQUENTLY ASKED ABOUT THE SENTENCING GUIDELINES, relied upon by Weinberger, that tax evasion and the offense that generated the unreported income should always be grouped together.   The court specifically cited the publication's disclaimer that it was not binding on the Sentencing Commission or on the courts. *Vitale*, 159 F.3d at 815.

In addition to the Third Circuit's holding in *Vitale*, other courts have held, in factual circumstances similar to Weinberger's, that tax and fraud charges should not be grouped together. *See United States v. Lindsay*, 184 F.3d 1138, 1142 (10th Cir. 1999) (noting that the type of harm and measure of harm for tax evasion and mail fraud are different); *United States v. Harpaul*, 25 F. Supp. 2d 136, 137-38 (E.D.N.Y. 1998) (stating that tax evasion and mail fraud counts are not of the "same general type" and involved different victims) ; *United States v. McCormack*, No. 98 CR. 416 (DLC), 1998 WL 799176, at *8 (S.D.N.Y. Nov. 16, 1998) ("The perverse result of this argument is that conduct which the Guidelines have found serious enough to warrant

a two-level increase in sentence . . . would be used to reduce . . . the sentence that would apply if the income was not derived from criminal activity . . . . [T]he Court's decision properly avoids this result as well as the troublesome anomaly created by grouping, namely that the defendant would receive no additional penalty for his conviction for tax evasion.").

We find these authorities to be persuasive. As the district court pointed out, Weinberger's fraud counts and the tax count consisted of different elements, affected different victims, and involved different criminal conduct. These factors indicate that Weinberger's offenses must not be grouped together as they involve different types of crimes resulting in different harms. Weinberger relies only upon a Fifth Circuit case that is factually distinguishable and a Sentencing Commission publication that is not even binding on the Commission, let alone us.[2] By grouping these charges, we would allow Weinberger to evade punishment for his tax evasion conviction. This we cannot do.

---

[2] In a citation updating his brief, Weinberger relies upon *United States v. Fitzgerald*, 232 F.3d 315, 318-21 (2d Cir. 2000), for the proposition that "tax evasion, fraud, and conversion should be grouped together under USSG §3D1.2(d)." *Id.* at 320. The court based its decision on the fact that the harms caused by the crimes were all measured in monetary values and by tables that increase at the same rate and use the same monetary division points. *Id.* at 319-20. The court specifically referred to the tables in USSG §2F1.1 for fraud and USSG §2T4.1 for tax evasion – the same tables used to calculate the offense levels for Weinberger's mail fraud and tax evasion counts.

We find the authorities we have cited, which have held that tax evasion and fraud counts should not be grouped together, to be more persuasive. The cases that have not grouped these crimes have based their decisions on the fact that the harm and the victims of fraud and tax evasion are different and the grouping of fraud and tax evasion counts would result in no additional penalty for the tax evasion conviction. We find these to be more compelling reasons not to group than the arbitrary factors relating to the measurement of harm relied upon in *Fitzgerald* for grouping.

---

---

## CONCURRENCE

---

AVERN COHN, Senior District Judge, concurring. I write separately to emphasize the practical implications if there is a contrary conclusion to Part III.D. The dissent, along with a majority of the other Circuits,[1] believes that "the court," *i.e.*, the district judge, must determine the defendant's restitution payment schedule at sentencing and that to allow a probation officer to set the schedule is an unconstitutional delegation of a judicial function. This is a mistake. In my opinion, such a view puts form over substance, particularly since a probation officer does not "set" a payment schedule.

District courts rely upon probation officers everyday for the necessary information regarding an appropriate sentence. For example, probation officers prepare presentence investigation reports and recommend a sentence which the probation officer views appropriate in light of the Federal Sentencing Guidelines and the particularities of each defendant.[2] In a case where restitution is to be part of the sentence, the probation officer also recommends the amount of restitution.[3] In sentencing the defendant, however, it is the district court which actually sets the sentence and the restitution amount, if any.

---

[1] See *United States v. Merric*, 166 F.3d 406 (1st Cir. 1999); *United States v. Coates*, 178 F.3d 681 (3d Cir. 1999), *United States v. Dawkins*, 202 F.3d 711 (4th Cir. 2000), *United States v. Myers*, 198 F.3d 160 (5th Cir. 1999); *United States v. Mohammad*, 53 F.3d 1426 (7th Cir. 1995).

[2] *See* FED. R. CRIM. P. 32(b) and (c); 18 U.S.C. § 3552.

[3] *Id.*; *see also*, Chapter 11 of *The Presentence Investigation Report for Defendants Sentenced Under the Sentencing Reform Act of 1984*, Publication 107, Probation and Pretrial Services Division, Administrative Office of the United States Courts.

that Weinberger is to pay to his victims and (2) to amend Weinberger's sentencing order to reflect that the amount of restitution payable to the IRS is $160,004, instead of $370,624.

B

Weinberger's second challenge to his sentence is based on the district court's order that he pay full restitution to his victims, an amount totaling $1,285,243.25.

The current applicable law for restitution orders is the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A. It requires courts to order full restitution to victims regardless of a defendant's ability to pay. MVRA became effective on April 24, 1996. Weinberger's offenses were committed prior to this date.

Prior to the enactment of MVRA, the provisions of the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663, guided courts in determining restitution orders. In order to impose a restitution order under VWPA, a sentencing court was required to examine certain factors, including "the amount of loss" and "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3664(a).

Weinberger presents two alternative objections to the district court's restitution order: (1) to the extent the district court applied MVRA, its application violated the Ex Post Facto Clause of the United States Constitution and (2) to the extent the district court applied VWPA, the court failed to consider adequately Weinberger's inability to pay the amount of restitution ordered.

We conclude that the district court applied VWPA, but we have concerns with the district court's application of VWPA. The district court made clear in its judgment and at Weinberger's sentencing hearing that its restitution order was not made solely on the basis of MVRA, stating that "an order of restitution is appropriate in this case whether it be mandatory or not." Furthermore, the district court considered some of the factors set forth in VWPA in determining Weinberger's restitution order. The district court reviewed Weinberger's personal and financial information contained in

his presentence report. The court took into account the fact that Weinberger earned $68,000 in legitimate income in 1988 and that his prospects for future employment are good. Finally, the court concurred with the presentence report in noting that Weinberger is well educated and capable of gainful employment.

The factors that the district court considered were not inappropriate ones. This court has held that future employment and earning potential are appropriate considerations for determining the amount of restitution under VWPA. *See United States v. Sanders*, 95 F.3d 449, 456-57 (6th Cir. 1996); *United States v. Bondurant*, 39 F.3d 665, 668 (6th Cir. 1994). However, the district court did not consider all the factors necessary under VWPA in deciding to order Weinberger to pay full restitution of $1,285,243.25 to his fraud victims over five years. As a result, the district court abused its discretion.

According to VWPA, the sentencing court, when deciding whether to assess restitution, must consider "the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3664(a). We are not convinced that the court adequately considered the financial needs and earning ability of Weinberger and Weinberger's dependents.

In *United States v. Dunigan*, 163 F.3d 979, 982 (6th Cir. 1999), this court stated that "a district court must have, at a minimum, some indication that a defendant will be able to pay the amount of restitution ordered in order to comply with 18 U.S.C. § 3664(a)." Other than generally noting Weinberger's education and talents and his previous earnings of $68,000 a year as an attorney, prior to his having engaged in his illegal activities and having been disbarred, the court did not adequately assess whether Weinberger would have the ability to pay the amount of restitution it ordered. The district court did not consider the effect of Weinberger's

and conditions in its sentencing order and, by doing so, did not improperly delegate authority to the Bureau of Prisons.[6]

## IV

For the foregoing reasons, the judgment of the district court is AFFIRMED in part and REVERSED in part. All portions of the district court's judgment are AFFIRMED with the exception of the portions of the district court's judgment upholding Weinberger's orders of restitution to his victims and to the IRS. These portion of the district court's judgment are REVERSED and the case is REMANDED to the district court with instructions (1) to consider all necessary factors under VWPA in determining the proper amount of restitution

---

unit team shall review an inmate's financial obligations, using all available documentation, including, but not limited to, the Presentence Investigation and the Judgment and Commitment Order(s). The financial plan developed shall be documented and will include the following obligations, ordinarily to be paid in the priority order as listed:
>    (1) Special Assessments imposed under 18 U.S.C. 3013;
>    (2) Court-ordered restitution;
>    (3) Fines and court costs;
>    (4) State or local court obligations; and
>    (5) Other federal government obligations.

28 C.F.R. § 545.11(a).

[6] At oral argument, Weinberger made reference to the potential effects of his non-compliance with the terms of his financial plan as arranged through the IFRP. We note that under the IFRP regulations, "[r]efusal by an inmate to . . . comply with the provisions of his financial plan ordinarily shall result" in up to ten possible punishments, including not receiving bonus pay or vacation pay, being subject to a more stringent monthly commissary spending limitation, and being quartered in the lowest housing status. 28 C.F.R. § 545.11(d). Weinberger does not raise a specific objection to this section, however. His claim is based solely on delegation grounds. Moreover, due process challenges to the IFRP have uniformly been rejected. *See, e.g., Dorman v. Thornburgh*, 955 F.2d 57, 58-59 (D.C. Cir. 1992); *Johnpoll v. Thornburgh*, 898 F.2d 849, 851 (2d Cir. 1990); *James v. Quinlan*, 866 F.2d 627, 629 (3d Cir. 1989).

*v. Pandiello*, 184 F.3d 682, 688 (7th Cir. 1999); *United States v. Mortimer*, 94 F.3d 89, 91 (2d Cir. 1996). These courts were persuaded by holdings within their own circuits that the scheduling of restitution payments by a defendant's probation officer constitute an improper delegation. The courts established a consistent principle within their circuits that it was improper for courts to delegate scheduling of restitution payments either to prison officials or probation officers.

In this case, we have held that the district court did not improperly delegate the scheduling of Weinberger's restitution payments to his probation officer. For similar reasons, we hold that the district court did not improperly delegate the scheduling of Weinberger's restitution payments while in prison to the Bureau of Prisons through the IFRP. The Ninth Circuit came to the same result in *Montano-Figueroa*, in which the court rejected a delegation challenge to the IFRP. The court relied upon its previous circuit precedent with regard to probation officers to establish a general principle upholding "sentencing courts' decisions to delegate the timing and manner of payments of court-ordered restitution." 162 F.3d at 550. We also note this court's statement in *Whitehead* that a court may "adopt and incorporate into a sentence terms and conditions of probation, recommended to it by an administrative agency of the government." 155 F.2d at 462. The IFRP is a term and condition of imprisonment, not probation, but the same principle applies in this case. The district court adopted the terms and conditions of the IFRP as established by the Bureau of Prisons and as binding on the prison officials that carry them out. The district court did not state that Weinberger must pay restitution as arbitrarily ordered by the prison officials supervising him. Rather, the court ordered that Weinberger pay restitution through the terms and conditions of the IFRP.[5] The district court, in effect, adopted these terms

[5] The IFRP establishes the following process for setting an inmate's payment schedule.

(a) Developing a Financial Plan. At initial classification, the

---

disbarment on his ability to pay the restitution order. At the same time, the court did not consider what other abilities Weinberger has, possibly in the real estate field given his previous work as a real estate lawyer, that could enable him to meet his obligations. The court also did not review the financial needs of Weinberger and his dependents, which undoubtedly would affect Weinberger's ability to pay the full amount of restitution ordered. Instead, the district court imposed a restitution order that amounts to approximately $257,000 a year for five years, an amount that far exceeds Weinberger's previous high income and does not account for taxes that Weinberger would have to pay and for necessary subsistence costs for Weinberger and his dependents.

According to *Ratliff*, 999 F.2d at 1026, "[a] refusal to appeal an erroneous restitution award, which award would have been subject to reversal on appeal, would meet the *Strickland* test and would clearly constitute cause for [petitioner's] failure to appeal the award." Weinberger is able to establish cause based on his counsel's failure to appeal his restitution order to his vicitms. In addition, Weinberger can demonstrate prejudice based on his counsel's deficient performance. The district court abused its discretion in imposing a restitution order that the court should not have imposed with the limited explanation that it gave, had Weinberger's counsel properly objected to it on appeal. *See ibid.*

The district court abused its discretion by failing to consider adequately all of the factors necessary under VWPA in ordering Weinberger to make full restitution to his victims. As a result, we must reverse the restitution order and remand to the district court to engage in a more extensive inquiry under VWPA before determining the proper amount of restitution that Weinberger must pay.

C

Weinberger's third challenge to his sentence is based on the district court's order of restitution to the IRS for the one count of tax evasion on which Weinberger was convicted.

Weinberger was charged with tax evasion in connection with his 1990-94 federal income tax returns (Counts 9-13). Weinberger pleaded guilty only to Count 12, the 1993 year, and the remaining four counts were dismissed. The tax loss for 1993 was $160,004. The district court ordered, as a condition of supervised release, that Weinberger pay $370,624 in restitution to the IRS, the amount of the total tax loss for the five years.

Weinberger contends that, absent a specific provision in the plea agreement to pay full restitution pursuant to 18 U.S.C. § 3663(a)(3), the district court could only order restitution for the tax loss related to Count 12. The government concedes that Weinberger is correct. We agree. Weinberger is able to establish a claim of ineffective assistance of counsel with regard to this issue such that he is entitled to collateral relief under § 2255. Not only does Weinberger establish prejudice, but he establishes cause since his counsel's performance was deficient. *See Strickland*, 466 U.S. at 687.

In *Ratliff*, 999 F.2d at 1026, this court stated that "[a] refusal to appeal an erroneous restitution award, which award would have been subject to reversal on appeal, would meet the *Strickland* test and would clearly constitute cause for [petitioner's] failure to appeal the award." In this case, not only did Weinberger's trial counsel refuse to appeal the erroneous restitution award, but he compounded the problem in several respects. The restitution calculation in Weinberger's presentence report included the years 1990-94. Weinberger's counsel objected to this calculation on the basis that Weinberger's guilty plea did not include the 1994 tax year. This objection appeared to concede that it was proper that Weinberger be ordered to pay restitution for the tax years 1990-93. This objection was in error. Weinberger pleaded guilty to tax evasion *only* for the 1993 tax year. Therefore, not only should the 1994 tax year not have been included in the restitution calculation, but the years 1990-92 should not have been included as well. At Weinberger's sentencing hearing, Weinberger's trial counsel withdrew this erroneous objection on the basis that an audit was being prepared to determine the

Circuit stated to Signori, we note that, "[t]o the extent that [the defendant] is concerned that the probation department may abuse its delegated authority, he may always bring the probation department's orders concerning restitution to the attention of the district court and seek a modification of any order." *Signori*, 844 F.2d at 642.

2

Weinberger also contends that the district court improperly delegated the scheduling of his restitution payments while in prison by ordering that "[t]he Defendant shall pay restitution . . . through the Bureau of Prisons Inmate Financial Responsibility Program."

The IFRP is a work program instituted by the Bureau of Prisons to encourage "each sentenced inmate to meet his or her legitimate financial obligations." *Montano-Figueroa v. Crabtree*, 162 F.3d 548, 548 (9th Cir. 1998) (quoting 28 C.F.R. § 545.10). The program allows for the development of a financial plan that allows inmates to pay enumerated obligations, such as restitution payments, while incarcerated. *See ibid.* (citing 28 C.F.R. § 545.11). Although this court has not been presented with the issue, other circuit courts have upheld the IFRP generally and against constitutional due process challenges. *See id.* at 549 (citing cases). While not addressing specific challenges to the IFRP, this court has implicitly endorsed the program. *See United States v. Webb*, 30 F.3d 687, 690-91 (6th Cir. 1994); *United States v. Hill*, No. 98-3709, 1999 WL 801543, at *1 (6th Cir. Sept. 28, 1999).

Several courts have ruled that a district court's mandate to a defendant to participate in the IFRP is an unconstitutional delegation of authority because payment schedules under the IFRP are not fixed accorded to a predetermined formula, but vary at the discretion of prison staff. *See, e.g., United States*

---

not objected. An extension of the terms of probation . . . is not favorable to the person for the purposes of this rule.

We find these authorities to be persuasive.[3]  We hold that the district court acted properly by setting the total amount of restitution Weinberger is required to pay and by delegating the schedule of payments to the Probation Office.  As this court stated in *Gray*,  "[the] sentencing court does not abrogate its judicial authority when it delegates the setting of a restitution-payment schedule to the defendant's probation officer, provided that the court first establishes the amount of restitution."  1997 WL 413663, at *4.  Furthermore, as the Ninth Circuit noted in *Signori*, the district court "is empowered to 'revoke or modify any condition of probation,' including restitution, during the probationary period."  844 F.2d at 642 (quoting 18 U.S.C. § 3651).[4]  As the Ninth

---

[3]We note that other circuits have held that the determination of the rate and terms of restitution (including determination of the amount, timing, and schedule of installment payments) is a core judicial function that may not be delegated to probation officers.  *See, e.g., United States v. Coates*, 178 F.3d 681, 684-85 (3d Cir. 1999); *United States v. Miller*, 77 F.3d 71, 78 (4th Cir. 1996); *United States v. Graham*, 72 F.3d 352, 357 (3d Cir. 1995); *United States v. Mohammad*, 53 F.3d 1426, 1438-39 (7th Cir. 1995); *United States v. Johnson*, 48 F.3d 806, 808-09 (4th Cir. 1995); *United States v. Porter*, 41 F.3d 68, 71 (2d Cir. 1994);  *United States v. Albro*, 32 F.3d 173, 174 n.1 (5th Cir. 1994).  We decline to follow these cases.

[4]Although 18 U.S.C. § 3651 has been repealed, the current 18 U.S.C. § 3563(c) includes substantially similar language stating: "The court may modify, reduce, or enlarge the conditions of a sentence of probation at any time prior to the expiration or termination of the term of probation, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the conditions of probation."

Federal Rule of Criminal Procedure 32.1(b) sets forth the procedures for modification of probation.  It states:

A hearing and assistance of counsel are required before the term or conditions of probation . . . can be modified, unless the relief to be granted to the person on probation . . . upon the person's request or the court's own motion is favorable to the person, and the attorney for the government, after having been given notice of the proposed relief and a reasonable opportunity to object, has

amount of Weinberger's tax liability.  The district court then ordered that Weinberger pay the full amount of his tax liability for the years 1990-94.  Weinberger's counsel neither objected to this erroneous restitution order at the sentencing hearing nor on direct appeal.  In reviewing Weinberger's § 2255 motion, the district court concluded that because Weinberger's counsel withdrew his objection, the issue was not preserved for direct appeal or collateral review.

The deficiencies in the performance of Weinberger's counsel not only meet, but go beyond, the standard set forth in *Ratliff*.  Not only did Weinberger's counsel fail to appeal the erroneous order of restitution to the IRS, but he compounded the problem by filing an erroneous objection to the restitution calculation, which he later withdrew at sentencing.  If Weinberger's counsel had filed a proper objection to the restitution order (or clarified his erroneous objection at the sentencing hearing), Weinberger likely would have prevailed.  Furthermore, by withdrawing the objection he did file, Weinberger's counsel failed to preserve the issue for direct review.  Taken together, the actions of Weinberger's counsel with regard to this claim were deficient.

Weinberger was prejudiced by his counsel's deficient performance because he was ordered to pay money under an award that would not be upheld if his counsel had properly objected to it.  *See Ratliff*, 999 F.2d at 1026.  In *United States v. Gall*, 21 F.3d 107, 108 (6th Cir, 1994), this court, in a similar factual situation, held that "a district court may order a defendant to pay restitution conditioned upon supervised release solely for crimes of which the defendant was actually charged and convicted."  An exception to this is provided in 18 U.S.C. § 3663(a)(3), which authorizes an agreement between the parties to pay restitution for relevant conduct not included in a charge and conviction.  The government states that it intended for the district court to be given the discretion to order Weinberger to pay the IRS full restitution of $370,624, but the plea agreement did not specifically provide for such restitution, as required by 18 U.S.C. § 3663(a)(3).  As a result, the restitution order of $370,624 is outside the

statutory limits of 18 U.S.C. § 3663, and can and should be remedied under § 2255 collateral relief. *See Gall*, 21 F.3d at 108.

## D

Weinberger's final argument is that the district court erred by delegating the specific terms of Weinberger's restitution installment payment plan to the Bureau of Prisons and the United States Probation Office.

The district court ordered that Weinberger immediately pay restitution of $1,285,243.25 to his fraud victims. Assuming that this amount would not be paid immediately, the district court ordered that Weinberger make payments initially through the Inmate Financial Responsibility Program (IFRP) of the Bureau of Prisons and, thereafter, according to an installment plan developed by Weinberger and his United States probation officer. Weinberger claims that these are improper delegations to the Bureau of Prisons and his probation officer.

Weinberger relies upon the general proposition, stated in *Whitehead v. United States*, 155 F.2d 460, 462 (6th Cir. 1946), that "[f]ixing the terms and conditions of probation is a judicial act which may not be delegated." On consideration of the entire case, however, this proposition is less helpful to Weinberger than it first appears.

*Whitehead* involved a defendant who was convicted for violation of his probation. Whitehead challenged the conviction on the basis that the he was not properly placed on probation. He claimed that the duration of his probation was indefinite, no terms and conditions of probation were incorporated in his sentence, and he was never taken under the supervision of a probation officer.

This court affirmed Whitehead's conviction. The court noted that, while "[f]ixing the terms and conditions of probation is a judicial act which may not be delegated[, t]his does not mean, however, that the court may not adopt and

incorporate into a sentence terms and conditions of probation, recommended to it by an administrative agency of the government, and to impose such further terms and conditions as to it may seem best." *Ibid.* The court stated that it is "better practice" for a court "to announce specifically the terms and conditions under which probation is granted." *Ibid.* However, the court stated it is "universal practice, everywhere understood, that the minimum requirement . . . is that the defendant[] shall not, during the probationary period, again commit a felony." *Ibid.* As a result, the court upheld Whitehead's conviction for violating his probation by committing a felony.

While useful to the disposition of this case, *Whitehead* does not control our result. The *Whitehead* court did not consider whether it was improper to delegate a defendant's schedule of payments pursuant to a restitution order, but rather, it considered whether a defendant was properly placed on probation. Therefore, we will specifically address, in turn, Weinberger's contentions of improper delegation to his probation officer and to the Bureau of Prisons.

## 1

Weinberger argues that the district court improperly delegated authority to his probation officer by ordering a schedule of restitution payments "according to an installment plan developed by the Defendant and his probation officer." In two previous unpublished opinions, this court has held that under VWPA, the district court can delegate to a probation officer the determination of the "rate" of installment restitution payments as long as the district court sets the total amount of restitution that must be paid. *United States v. Gray*, No. 95-1832, 1997 WL 413663, at *4 (6th Cir. July 17, 1997); *United States v. Ferguson*, No. 95-1629, 1996 WL 571142, at *5 (6th Cir. Oct. 3, 1996); *accord United States v. Fuentes,* 107 F.3d 1515, 1528 n.25 (11th Cir. 1997); *United States v. Stinson,* 97 F.3d 466, 468 n.1 (11th Cir. 1996); *United States v. Barany*, 884 F.2d 1255, 1260 (9th Cir. 1989); *United States v. Signori*, 844 F.2d 635, 642 (9th Cir. 1988).