NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0382n.06

Case No. 21-6168

| | |
|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | **FILED**<br>Sep 22, 2022<br>DEBORAH S. HUNT, Clerk |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR |
| v. | ) ) | THE EASTERN DISTRICT OF KENTUCKY |
| JOSHUA JAMES MOORE, | ) | |
| Defendant-Appellant. | ) ) | OPINION |
| | ) | |

Before: MOORE, THAPAR, and LARSEN, Circuit Judges.

THAPAR, Circuit Judge. Joshua Moore was sentenced to 240 months' incarceration for (1) unlawfully possessing weapons as a felon, and (2) knowingly receiving child pornography. Moore argues that the district court should've grouped his offenses together, which would've produced a lower Guidelines range. But because Moore's offenses involved different victims and different harms, the district court properly imposed separate sentences for each crime. We affirm.

I.

Moore's decisions landed him in a "really dark place." R. 27, Pg. ID 209 (Tr. at 126:7). He not only possessed over 600 depictions of child pornography, but he also created videos in which he performed violent sex acts on lifelike dolls that resembled children. Later, Moore gave one of his friends, William Bishop, a USB drive containing some of these depictions. Disturbed by what he saw, Bishop turned the drive over to police, who then arrested Moore.

Searches of Moore's property later yielded one sawed-off shotgun and two homemade pipe bombs. As a twice-convicted felon, Moore wasn't allowed to possess firearms. *See* 18 U.S.C. § 922(g)(1). Nor was he permitted to possess explosives, let alone detonate them in his own backyard to practice retaliating against Bishop "for turning the thumb drive over to law enforcement," as well as another man for calling Moore "a pedophile." R. 27, Pg. ID 100 (Tr. at 16:21–17:22).

On May 21, 2021, Moore pled guilty to possessing weapons as a felon, 18 U.S.C. § 922(g)(1); and to knowingly receiving child pornography, 18 U.S.C. § 2252(a)(2). At sentencing, Moore claimed that his offenses should've been grouped together under U.S.S.G. § 3D1.2(d). The district court disagreed and sentenced Moore to concurrent sentences of 120 months' and 240 months' imprisonment for his weapons and child-pornography offenses respectively, as well as a life term of supervised release.

II.

Moore presents two arguments on appeal. We take them in turn.

A.

As he did below, Moore argues that the district court should've grouped his offenses under § 3D1.2(d) of the U.S. Sentencing Guidelines. Under that provision, courts should group "[a]ll counts involving substantially the same harm" when the offenses: (1) contribute to the same aggregate harm, or (2) are part of the same "ongoing or continuous" criminal behavior. U.S.S.G. § 3D1.2(d). Neither condition applies here.

Moore's offenses don't involve the same "aggregate harm." Subsection (d) applies only "when the measurement of harm from one offense is essentially equivalent to the measurement of

harm for [the] other." *United States v. Harmon*, 409 F.3d 701, 709 (6th Cir. 2005) (quoting *United States v. Taylor*, 984 F.2d 298, 303 (9th Cir. 1993)). But these offenses create different harms.

When Moore unlawfully owned weapons that he was "determined unqualified to possess," he harmed society. *United States v. Herrera*, 265 F.3d 349, 353 (6th Cir. 2001); *see* U.S.S.G. § 3D1.2 cmt. 2. By contrast, Moore's second offense harmed the specific children who were raped in each of the images he received. *See* Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110-358, § 102(3), 122 Stat. 4001, 4001 ("Child pornography is a permanent record of a child's abuse and the distribution of child pornography images revictimizes the child each time the image is viewed."). These harms can't be compared, much less aggregated.

To make these offenses seem more similar, Moore argues that "[b]oth offenses are covered by guidelines that relate to quantity." Appellant's Br. at 12. That is true, but irrelevant. Two pipe bombs are worse than one. Six-hundred depictions of child pornography are worse than one. But even if Moore had *one million* pipe bombs, his child pornography sentence would remain unaffected. Moore's distinct conduct triggered different enhancements under independent Guidelines—the two quantities simply aren't fungible. And where, as here, "the applicable Guidelines sections for separate counts measure the harm differently, those counts need not be grouped." *United States v. Williams*, 154 F.3d 655, 657 (6th Cir. 1998).

Thus, Moore's offenses aren't "aggregable" under subsection (d). *Id.* Nor did his two offenses arise from "ongoing or continuous" conduct. *See* U.S.S.G. § 3D1.2(d). Rather, each crime occurred at distinct times, in separate settings, and for different reasons.

In short, the district court didn't err in refusing to group Moore's offenses under subsection (d).

B.

Moore also argues that the district court should've grouped the offenses under subsection (b). Under that provision, counts should be grouped when they "involve the same victim," and "two or more acts" are connected by a common criminal objective, scheme, or plan. U.S.S.G. § 3D1.2(b).

First, as already explained, Moore's two counts primarily involve different victims. It is not the case, as Moore argues, that Bishop counts as a "single victim related to both Counts." Appellant's Br. at 5. Bishop wasn't the person "most seriously affected by" Moore's offenses, so he's no more than an "indirect or secondary victim," which the Guidelines expressly *don't* cover. U.S.S.G. § 3D1.2 cmt. 2.

Indeed, though Moore's child pornography disturbed Bishop, Moore primarily harmed the specific children depicted therein. While Moore might have intended to blow up Bishop, Moore "most seriously" harmed society by possessing weapons as a felon. *Id.*

Second, Moore's offenses weren't linked by a common criminal objective, scheme, or plan. To be sure, in his brief, Moore contends that he "had a single criminal objective, which was to possess the explicit images that he distributed to Bishop" and then "prevent Bishop from participating in the prosecution" by blowing him up. Appellant's Br. at 10. But even in Moore's own telling, these are clearly two separate criminal objectives, not one.

Thus, the district court did not err.

\*     \*     \*

We affirm.